ESTATE OF Larry M. BRATTON, Joann M. Bratton, Executrix, Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE CO., et al, Defendants.

No. 3:97CV4–S.

United States District Court,
N.D. Mississippi,
Western Division.

Sept. 16, 1998.

Barry J. Walker, Tupelo, MS, for plaintiff.

William F. Ray, Watkins & Eager, PLLC, Jackson, MS, for defendants.

## MEMORANDUM OPINION

SENTER, Senior District Judge.

This cause is before the court following a bench trial on the plaintiff's ERISA claim.

## FACTS

On August 21, 1976, Larry Bratton was injured in an automobile accident which rendered him totally and permanently disabled

for the remainder of his life. The issue in this cause of action is whether Bratton was enrolled in a supplemental 24–hour coverage accident policy with his employer and, if so, whether the doctrine of equitable estoppel would operate so as to allow recovery of the benefits under that policy.

There is no doubt that during Bratton's employment with ITT Thompson Industries, Inc. from 1971 until 1976 that he elected insurance coverage resulting in payroll deductions. Several enrollment cards signed by Bratton authorizing payroll deductions for insurance were entered into evidence. Three of the enrollment cards were signed on February 16, 1971, the date on which Bratton became employed with ITT, and authorize deductions for additional life insurance as well as dependent medical coverage through ITT's carrier at the time, Travelers Insurance. On December 25, 1972, Bratton signed two enrollment cards—the first authorized deductions for additional life through Equitable Life signifying a change in carriers for that particular plan while the second card authorized deductions for long term disability coverage to be provided by Travelers.[1] The sixth enrollment card is dated December 17, 1973 and authorizes deductions for dependent medical coverage as well as supplemental life and AD & D, "Option A," through Equitable Life. For purposes of determining the coverage Bratton elected at the time of his accident, the court finds that the December 17, 1973 card and the December 25, 1972 long term disability enrollment card are the only relevant enrollment cards entered into evidence. Together, these two cards provide the apparent authority for a portion of the deductions taken from Bratton's pay at the time of his accident.

According to the ITT plan summaries offered into evidence, ITT furnished basic life, medical and dental, and business travel insurance for each employee. The basic life and accidental death and dismemberment coverage could be increased under "Option A" to include an additional principal sum "approximating one times to two times the annual salary." Also, at employee expense, the medical and dental insurance could be extended to dependent coverage. Employees had the option of enrolling in long term disability coverage to provide monthly supplements. Finally, options were available under the business travel policy to allow 24 hour accident coverage for the employee (Plan 1) or the employee and his family (Plan 2). It is the 24 hour accident policy through National Union Fire Insurance Company which is at the center of the controversy.

JoAnn Bratton, wife of the deceased, testified that she remembered discussing whether they should opt to take the 24 hour accident coverage and that the couple ultimately determined to take the extra coverage based upon the fact that Larry Bratton commuted on a dangerous two-lane highway each day.[2] She testified that they did not consider the minimal cost to be a burden. JoAnn Bratton further testified that after Larry Bratton's accident she was present when he telephoned personnel at the Georgia office of ITT. During the course of the conversation, Larry Bratton asked whether he could collect the principal sum for loss under the group accident plan. According to JoAnn Bratton who testified that she was sitting beside her husband during the telephone conversation, he hung up and immediately relayed to her that his permanent disability was not covered under the plan because he had not suffered severance of his limbs.[3]

After Larry Bratton had been diagnosed with a terminal illness in 1996, the Brattons were reviewing paperwork and discovered a copy of the Group Accident Plan. Mrs. Bratton's brother-in-law, an attorney, reviewed the booklet and determined that Larry Bratton had been eligible for coverage under the plan despite information to the contrary by personnel from ITT. At that point, the Brat-

1. Apparently, the long term disability coverage was a new offering in the ITT group plan.

2. The couple lived in Southaven and Larry Bratton worked at the ITT facility in Holly Springs. The court takes judicial notice that mileage be-

tween the two cities is approximately 40 miles one way.

3. Larry Bratton did receive monthly supplements under the long-term disability policy, a separate policy.

tons began making a concerted effort to collect the principal sum under the policy.[4]

## DISCUSSION

The plaintiff argues that Larry Bratton was enrolled as a participant in the optional insurance plan and that Bratton made a timely claim under the policy when he telephoned ITT about the claim or, alternatively, that the doctrine of equitable estoppel tolls the applicable statute of limitations. The defendants argue that there is no evidence that Bratton was ever enrolled in the policy, that Bratton's claim is barred by the statute of limitations, and that the claim is barred by the doctrine of laches.

■■■ The defendants argue there is no conclusive evidence to prove that Bratton had opted for the 24 hour accident coverage. Primarily, the defendants argue that no enrollment card for the coverage has surfaced. However, as the plaintiff points out, if premiums for the additional policy were collected from Bratton then coverage is deemed to exist regardless of proof of authorization for payroll deductions. JoAnn Bratton supports her position that Larry Bratton was a participant in the optional accident group policy at the time of his disability by offering a copy of Mr. Bratton's final pay stub which is dated October 31, 1976. The pay stub, which represents semimonthly pay, indicates a deduction of $19.04 for group insurance. The plaintiff accounts for the deduction by computing the monthly premiums for dependent medical coverage,[5] for additional life insurance under Option A, for long term disability coverage,[6] and for the 24 hour accident plan.[7] According-

ing to the plaintiff's figures, the additional premiums to Larry Bratton each month resulted in a total amount of $38.03. Assuming the semimonthly deduction, or $19.04, is doubled resulting in a total monthly deduction of $38.08, the plaintiff's calculation leaves unaccountable five cents each month. In spite of the plaintiff's assertion that an approximation is adequate to create substantial evidence, this court cannot base a decision for coverage where a five cent disparity exists. However, in reviewing the plaintiff's case, the court found an error in her calculations.

Given the revision dates stated in the plan summaries and the lack of rebuttal evidence to the contrary, the court does not question the accuracy of the premiums as quoted in the plan summaries for the dependent coverage, the additional life, and the long term disability. Furthermore, all of the premiums, including the 24 hour accident coverage, are based on salary as opposed to age. Therefore, the court agrees with the plaintiff that the monthly cost to Larry Bratton for the dependent medical coverage was $12.00, that the monthly cost to Larry Bratton for additional life insurance under Option A was $15.50, and that the monthly cost to Larry Bratton for long term disability coverage was $7.53. At a minimum, Larry Bratton paid a monthly sum of $35.03 for additional insurance at the time of his accident. By dividing the figure in half because of the semimonthly pay schedule, the sum certain for insurance premiums from the October 31, 1976 pay check was at least $17.51.[8] Because the October 31, 1976 deduction for group insurance was $19.04, a discrepancy of $1.53 exists.

4. The Brattons filed a claim under the policy in 1996 and appealed the denial of that claim.

5. The schedules of monthly contributions for dependent medical coverage and the additional life insurance are included in the same plan summary booklet which is dated as revised January 1, 1974. The revision date is consistent with the December 17, 1973 enrollment card on which Larry Bratton elected the dependent coverage as well as the additional life insurance under Option A.

6. The long term disability summary is in a separate booklet with a revision date of May 1, 1976 and contains a schedule of monthly contributions based on salary.

7. A summary of the business travel and 24 hour accident coverage group plan is contained in a third booklet entitled, "Group Accident Insurance Program." The only date contained within this plan summary is located under the effective dates of coverage section and states that coverage is effective automatically as of the date of the Master Policy—November 1, 1973.

8. According to GAAP (Generally Accepted Accounting Principles), the larger amount, or $17.52, would have been deducted in the first pay period of the month.

Unlike the schedules presented in the other plan summaries, the schedule in the 24 hour accident group plan is only an approximation of premiums. The plaintiff assumed that the monthly deduction was $3.00. The correct monthly cost to Larry Bratton for the optional 24 hour accident coverage under Plan II was $3.06.[9] Thus, the $1.53 semimonthly discrepancy is accounted for by the inclusion of premiums under the 24 hour accident coverage.

In deciding whether the doctrine of equitable estoppel is applicable, the court must determine whether JoAnn Bratton's testimony regarding Larry Bratton's statement to her is admissible. At the outset, the court notes that her testimony establishing presence during the telephone conversation is not hearsay. She did testify, however, that her husband told her after the telephone conversation ended that his disability was not covered under the accident policy because he had not severed a limb. This statement, clearly hearsay, is excepted under Rule 804(b)(3). The declarant, who is deceased, is unavailable to testify as required by Rule 804(a)(4). The statement was at the time of its making contrary to the declarant's pecuniary interest and rendered invalid a claim by the declarant against another. Fed.Evid.R. 804(b)(3). Because the obvious result was failure to pursue his claim of $51,000.00, a reasonable person in Larry Bratton's position would not have made the statement unless believing it to be true. Further corrobo-

ration of the statement exists in the fact that JoAnn Bratton was aware they had the optional coverage, that they did not file a claim in 1977,[10] and that they vigorously pursued the claim in 1996 when reviewing paperwork in preparation for Larry Bratton's death. Finally, the defendants have not offered any evidence or argument refuting that the statement was made by an ITT representative. Based upon corroborating evidence, JoAnn Bratton's credibility, and the hearsay exception under 804(b)(3), the court finds the testimony is admissible.

The court has no difficulty determining the fiduciary status of the ITT representative in regard to claims under the group plan. *Williams v. Jackson Stone Co.*, 867 F.Supp. 454 (S.D.Miss.1994). Indeed, the defendants offer no argument to the contrary.[11] To determine whether the representation made by the ITT representative, a plan fiduciary, is adequate to invoke equitable estoppel,[12] the plaintiff must show that a material misrepresentation was made, that the plaintiff relied to his detriment on the misrepresentation, and that extraordinary circumstances exist. *Weir v. Federal Asset Disposition*, 123 F.3d 281, 289 (5th Cir.1997). As stated previously, detrimental reliance for the material misrepresentation is quite evident by Larry Bratton's failure to pursue his rightful claim to $51,000.00 in 1977. Extraordinary circumstances exist in that Larry Bratton's diagnosis with a terminal illness in 1996 led to the discovery of the plan sum-

9. The principal sum available to Larry Bratton under the plan was $51,000.00, or three times his annual salary of $16,700 rounded up to the next highest $1,000. The premium was calculated at $.06 per $1,000 in principal sum (51 times $.06) equaling a premium of $3.06.

10. According to the terms of the plan, Larry Bratton became eligible for the principle sum one year after the inception of his permanent total disability which occurred on August 21, 1977.

11. The defendants argue that the plaintiffs did not established coverage for the relevant period and that because of the lateness of the claim, they were unable to perform a proper investigation or proper medical evaluation. Alternatively, the defendants argue that the claim is barred by the statute of limitations and/or the doctrine of laches.

12. As explained by Judge Lee in *Williams*, the Fifth Circuit has expressly rejected the use of equitable estoppel in cases involving the plaintiff's claim for benefits orally promised but excluded by the written terms of the plan. See *Rodrigue v. Western & Southern Life Ins. Co.*, 948 F.2d 969 (5th Cir.1991). The Fifth Circuit reasoned that to do so would be inconsistent with ERISA's writing requirement which protects "the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to them under the express terms of the plan." *Williams*, 867 F.Supp. at 463, n. 17 (quoting *Rodrigue*, 948 F.2d at 971). In the case at bar, the doctrine of equitable estoppel is asserted as a defense to the statute of limitations. See *Doe v. Blue Cross & Blue Shield*, 112 F.3d 869, 875 (7th Cir.1997).

maries and that there is no doubt but that Larry Bratton was totally and permanently disabled as required by the plan. Therefore, the court finds that the plaintiff prevails on her argument that equitable estoppel operates to provide coverage under the accident plan.

 Despite the defendants argument to the contrary, the court finds that prejudgment interest on the principal sum should be awarded calculated from the date on which Larry Bratton was entitled to receive the principal sum, or August 21, 1977. *Hansen v. Continental Ins. Co.*, 940 F.2d 971, 984 (5th Cir.1991) (award of prejudgment interest is discretionary with the court). The defendant argues that the rate of interest should be equivalent to the rate of interest in the federal statute for post-judgment interest, 28 U.S.C. § 1961. However, the Fifth Circuit initially rejected this argument in *United States ex rel. Canion v. Randall & Blake*, 817 F.2d 1188 (5th Cir.1987), and then specifically rejected the argument as pertaining to ERISA causes of action in *Hansen v. Continental Insurance*, a 1991 case. The defendants' position in regard to the rate of interest is directly in contrast with controlling law in the Fifth Circuit. While the Fifth Circuit instructed in *Hansen* that state law provides the appropriate guidance in determining prejudgment interest under ERISA, it still remains within the court's discretion to select an equitable rate of interest because state law is not binding, but merely provides guidance. *Hansen v. Continental*, 940 F.2d at 984 (citing *Dallas Fort Worth Regional Airport v. Combustion Equipment Associates*, 623 F.2d 1032, 1041 (5th Cir.1980)).

Nonetheless, the court chooses to adhere to the guidance provided by state law. In accordance with § 75–17–1(1) of the Mississippi Code and as interpreted by the Fifth Circuit, the court finds today that the proper rate of prejudgment interest for the plaintiff is eight (8) percent per annum compounded annually. *Exxon Corp. v. Crosby–Mississippi Resources*, 40 F.3d 1474 (5th Cir.1995) (citing *Stovall v. Illinois Central Gulf*, 722 F.2d 190 (5th Cir.1984)). An order designating the plaintiff as the prevailing party and directing the applicable rate of interest as decided above shall be issued.