**Jack A. TURNER, et al., Appellants,**

v.

**CF & I STEEL CORPORATION and Non-Contributory Pension Plan of CF & I Steel Corporation and the Pension Plan of CF & I Steel Corporation and Program of Insurance Benefits For Employees of CF & I Steel Corporation Outside of Collective Bargaining Units.**

Nos. 84–1057,* 84–1072.

United States Court of Appeals, Third Circuit.

Argued June 10, 1985.

Decided Aug. 14, 1985.

* The appeal in 84–1057 is dismissed because it was taken from a January 9, 1984 order, which was superseded by an amended order on January 25, 1984.

**44**

Harry C. Barbin (argued), Barbin, Lauffer & O'Connell, Rockledge, Pa., for appellants.

Michael L. Temin (argued), M. Norman Goldberger, Wolf, Block, Schorr and Solis-Cohen, Philadelphia, Pa., for appellees.

Before WEIS, GARTH and STAPLETON, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

Although a number of factual issues have been raised in this ERISA case, plaintiffs pose a significant legal question— whether they are entitled to a jury trial. In agreement with the district court, we conclude that in this suit against a plan trustee for pension benefits, the beneficiaries do not have the right to a jury trial.

This case comes to us after a bench trial in which the district court found that plaintiffs were not entitled to additional pension benefits and entered judgment for defendants. Plaintiffs appealed.

Plaintiffs are retired nonunion employees of defendant C.F. & I. Steel Corporation. They are presently receiving benefits under the non-contributory "Roebling Plan," one of two retirement programs maintained by the company. Their principal contention is that they should be receiving the same post-retirement benefits that are provided to employees who retired under the "Master Plan."

The existence of two pension plans came about as the result of a merger. C.F. & I. established its Master Plan in 1950. In 1952, the company acquired the stock of John A. Roebling Sons Corp. and it became a division of C.F. & I. Roebling had its own retirement plan which had been in operation for many years and it continued after the merger.

Membership in the two plans was mutually exclusive. All employees hired by the Roebling Division before June 30, 1962 were included in the Roebling non-contributory plan. All other employees of C.F. & I. participated in the Master Plan.

From 1954 to June 30, 1974, the terms of the Roebling Plan and the Master Plan were substantially the same with respect to eligibility, amount and method of benefit payments, determination of service, and

settlement of disputes. Even though C.F. & I, negotiated terms of a pension plan with the union local at the Roebling Division separately, the company made a practice of granting the nonunion employees under the Roebling Plan the same benefits granted to members of the union. This procedure was followed until 1974 and had the effect of providing participants in the Roebling Plan approximately the same benefits as those who were under the Master Plan.

In 1974, the company shut down the Roebling Division and laid off the employees. When collective bargaining negotiations with the local union ceased, no increased benefits were provided under the Roebling Plan. The Fund did however continue to pay pensions as provided in 1974.

C.F. & I.'s operations at other sites continued, and the company and the local union maintained their collective bargaining relationship at those plants. As result of union negotiations, the company provided additional benefits to participants and retirees under the Master Plan. The company, however, denied the plaintiffs' request for similar increases to retirees of the Roebling Division.

Plaintiffs filed this suit in the district court, alleging that after the acquisition of Roebling, C.F. & I. merged the two pension funds and treated them as one. Plaintiffs argue the company was arbitrary and capricious in granting additional benefits to retirees under the Master Plan while denying similar increases to participants of the Roebling Plan. Plaintiffs allege that therefore the company and the trustees of pension plans were in violation of ERISA.

The district court denied the plaintiffs' request for a jury trial and dismissed two counts of the complaint preliminarily. After a bench trial, the court found that the two plans had not been consolidated but had been maintained as separate entities. In support of its findings, the court observed that each of the plans sent its own reports to the Department of Labor and each filed individual tax returns. The actuarial and audit reports for each plan were different, and separate filing systems were utilized. Though there was some overlap, each plan had its own distinct pension board. IRS determination letters were submitted individually for each plan. Pension documents and filing systems always reflected the separate identities of the plans.

Although a few employees were transferred from the Roebling Plan to the Master Plan after 1974, the court determined that because the transferees continued to work for C.F. & I. the reassignments were justified and did not act to merge the plans. Having determined that the plans were separate entities, the court decided that the plaintiffs' "claim of disparate treatment necessarily fails."

The district court also held that the plaintiffs' claims against C.F. & I. for failure to furnish certain documents under § 502(c) of ERISA, 29 U.S.C. § 1132(c), could not succeed. The court found that C.F. & I. had appointed Vincent G. Galvin as administrator of the pension plans, that plaintiffs were aware of his appointment, and that they should have directed their inquiries to him rather than the company.

On appeal, plaintiffs contend that the court erred in striking the demand for a jury trial and in finding that there were separate plans. Plaintiffs also assert error in the court's failure to hold that defendants were estopped from asserting the existence of separate plans; to assess the statutory penalty for the non-production of requested documents and to find that reduction of benefits to one pensioner, Howard E. Maloney, constituted unlawful interference with rights protected by ERISA.[1]

---

1. The plaintiffs also complain of the district court's tardiness in filing its findings of fact and

■ With the exception of the jury trial demand, the issues posed on appeal are primarily factual. The plaintiffs' case rests basically on their contention that there was but one retirement plan. The district court, however, determined that the two plans were separate. This finding is not clearly erroneous. Indeed, on this record, particularly the documentary evidence, any other finding would lack adequate support. In addition, we conclude that plaintiffs have not made out a case of estoppel and have not established any infringement of Maloney's statutory rights. Likewise, plaintiffs' claims for statutory penalty must also fail. A stipulation between the parties reveal that counsel were aware that Vincent G. Galvin rather than C.F. & I. was the plan administrator.

We turn then to the question whether plaintiffs were entitled to a jury trial. Although the issue has been addressed by several other Courts of Appeals, this is a case of first impression in this court.

ERISA itself does not make any provision for a jury trial, and the sparse legislative history is not enlightening. Section 502(a) of the Act, 29 U.S.C. § 1132(a), grants a variety of remedies for enforcement of statutory rights. Subsection (a)(3) permits a participant, beneficiary or fiduciary to obtain an injunction against practices which violate the Act, to enforce ERISA or the terms of a plan, or to obtain other equitable relief. Jurisdiction over these cases is restricted to the federal courts. By its terms the relief available under this subsection is equitable and consequently no jury trial is available.

Subsection (a)(1)(B) provides that a civil action may be brought by a participant or beneficiary to recover benefits, to enforce rights under a plan, or to clarify rights to future benefits. State and federal courts are given concurrent jurisdiction over suits brought under this subsection.

Suits brought under subsection (a)(1)(B) are not categorized as equitable as are those under subsection (a)(3). A survey of the case law, however, reveals that most cases brought under subsection (a)(1)(B) do not involve disputed factual matters. Most often the question is whether the trustees or plan administrators properly exercised discretion in denying or setting the level of benefits to a participant or beneficiary, an issue more appropriately resolved by the court. The nature of most controversies under subsection (a)(1)(B), therefore, does not lend itself comfortably to the traditional jury trial.

The Courts of Appeals have almost uniformly agreed that jury trials are not available to resolve claims of the type presented here. In *Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), the question was whether the trustees had properly determined the plaintiff's employment status. Noting that the remedies under § 502(a)(1)(B) had their origin in the law of trust, the court interpreted congressional silence on the right to a jury trial as reflecting "an intention that suits for pension benefits by disappointed applicants are equitable." *Id.* at 829. In addition, the limited scope of review over a trustee's decision, "bespeaks a legislative scheme granting initial discretionary decision-making to bodies other than the federal courts, with which federal jury trials have proved incompatible." *Id.* at 830.[2]

*Calamia v. Spivey,* 632 F.2d 1235 (5th Cir.1980), adopted *Wardle's* reasoning and held that lacking any clear congressional intent the court should be guided by previous cases which considered such claims by pension beneficiaries as equitable. To the

conclusions of law. Although this case could have been handled with more dispatch, we find no prejudice that requires reversal.

**2.** The Court of Appeals for the Seventh Circuit has distinguished *Wardle* from *Bugher v. Feightner,* 722 F.2d 1356 (7th Cir.1983) (a suit by

trustees of a pension fund against the employer for delinquent contributions). The *Bugher* factual situation and jurisdictional basis are quite different from those presented in the case at hand and consequently that opinion is not pertinent.

same effect see *Berry v. Ciba-Geigy Corporation,* 761 F.2d 1003 (4th Cir.1985); *Blau v. Del Monte Corp.,* 748 F.2d 1348 (9th Cir.1984); *In re Vorpahl,* 695 F.2d 318 (8th Cir.1982).

The Court of Appeals for the Second Circuit has held that jury trials are not available under subsection (a)(1)(B). *Katsaros v. Cody,* 744 F.2d 270 (2d Cir.1984), *cert. denied,* ⸺ U.S. ⸺, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). Originally, that court had affirmed without published opinion a district court's decision which had concluded that a jury trial should be provided in a case where a beneficiary alleged breach of fiduciary duty by the trustee. *Pollock v. Castrovinci,* 476 F.Supp. 606 (S.D.N.Y.1979), *aff'd,* 622 F.2d 575 (2d Cir. 1980). In explicitly refusing to follow the *Pollock* ruling, the *Katsaros* panel stated that the beneficiaries were not entitled to a jury trial in a suit filed against the trustees of a pension plan. The Court of Appeals explained that the jury trial issue in *Pollock* had become moot by later developments and therefore was not a matter considered in the earlier appeal. *See also The Right to a Jury Trial in Enforcement Actions under Section 502(a)(1)(B) of ERISA,* 96 Harv.L.Rev. 737 (1983). *Cf. Peckham v. Board of Trustees,* 653 F.2d 424, 426 n. 3 (10th Cir.1981).

Although we have not had the occasion to rule on the jury trial issue within the confines of ERISA, we did have a similar issue presented in *Nedd v. United Mineworkers of America,* 556 F.2d 190 (3d Cir. 1977). In that case, pensioners brought an action under § 301 of the LMRA against the trustees of a pension plan and a union for failure to pursue delinquent contributions from employers. We noted, "The remedies of trust beneficiaries against trustees or third parties are equitable rather than legal. That the liability of either or both may be a matter of federal rather than state law has no bearing on the Seventh Amendment issue." *Id.* at 207.

■ By similar reasoning we are persuaded that the remedy plaintiffs sought in the case at hand is equitable. The Supreme Court's pronouncement in *Central States, Pension Fund v. Central Transport, Inc.,* ⸺ U.S. ⸺, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985)—that the duties of plan trustees are to be examined under the common law of trusts—supports our conclusion that only equitable relief is available under § 502(a)(1)(B) of ERISA.

We therefore find ourselves in agreement with the other Courts of Appeals which have held that no jury trial is required in suits under § 502(a)(1)(B) by a beneficiary or participant against a trustee.

Finding no error in the district court's determinations, we will affirm its judgment.