Charlie MURPHY and Hazel Murphy, Plaintiffs,

v.

WAL–MART ASSOCIATES' GROUP HEALTH PLAN, Prudential Health Care Plans, and Dr. Allan J. Chernov, Defendants.

Civil Action No. 1:95cv12.

United States District Court, E.D. Texas, Beaumont Division.

June 10, 1996.

Kenneth Lewis, Bush, Lewis, Ramsey & Roebuck, Beaumont, TX, for plaintiffs.

Alen Magenheim and J. Preston Wrotenbery, Hirsch, Robinson, Sheiness & Glover, Houston, TX, for Wal–Mart Associates' Group Health Plan.

Katherine Youngblood, Youngblood & White, Houston, TX, for Prudential and Allan Chernov.

## MEMORANDUM OPINION

HEARTFIELD, District Judge.

Before the court is Wal–Mart Associates' Group Health Plan's (Wal–Mart Plan) Motion for Summary Judgment [33] and Prudential Health Care Plan's (Prudential) Motion for Summary Judgment [64]. Wal–Mart Plan moves for summary judgment on the ground that the Plan did not act in an arbitrary and capricious manner in denying plaintiffs' benefits and subsequent appeal. Prudential, a claims administrator to the Plan, moves for summary judgment on the ground that it can not be held liable to plaintiffs' under the ERISA statute. For the reasons stated in the opinion that follows, the court GRANTS both motions for summary judgment.

## I. Facts

Plaintiff, Hazel Murphy, has been employed by Wal–Mart Stores, Inc. for several years. She procured health insurance under the Wal–Mart Associates' Group Health and Welfare Plan, part of an employee benefits package governed by ERISA. Mrs. Murphy paid additional premiums to have her husband, plaintiff, Charlie Murphy, covered under the Wal–Mart Plan.

In about January of 1991, Mr. Murphy was diagnosed with a form of cancer, follicular small cleave cell Non–Hodgkin's Lymphoma. Early treatments for this cancer in both Beaumont, TX and eventually at the M.D. Anderson Hospital in Houston, TX were covered by the Wal–Mart Plan. In approximately June 1994, Mr. Murphy's treating physicians at M.D. Anderson recommended that he be tested as a potential candidate for a specific treatment, high dose chemotherapy ("HDC") with autologous bone marrow transplant ("ABMT"). Wal–Mart Plan agreed to pay for testing. The test results indicated that Mr. Murphy was medically eligible for HDC with ABMT. This specialized treatment involved (1) harvesting bone marrow from Mr. Murphy, (2) purging the bone marrow of any diseased cells, (3) preserving the purged bone marrow while he underwent high dose chemotherapy, and (4) eventually whole body irradiation where the purged and

preserved bone marrow would be returned to his body.

The Wal–Mart Plan required Mr. Murphy to obtain pre-approval for this particular treatment. Accordingly, Mr. Murphy sought pre-determination from the Plan to undergo the HDC with ABMT treatment. Because it was a very specialized and high risk procedure, the Plan referred Mr. Murphy's request to Prudential pursuant to an agreement between the Plan and Prudential. Under the terms of this agreement, Prudential evaluates the medical eligibility of participants to successfully undergo the type of specialized, high-risk treatment such as the one Mr. Murphy requested.

After submitting Mr. Murphy's file to several individuals, Prudential determined that the proposed treatment was not appropriate for Mr. Murphy. Prudential first assigned Mr. Murphy's case to a nurse, Ms. Anne Pape, in the Technology and Clinical Practice Assessment Unit (TCPA Unit). Ms. Pape reviewed Mr. Murphy's records, the proposed treatment, researched current medical literature, and reviewed Prudential's Internal Evaluation and Coverage Statement. She then sent the file, consisting of records selected by Murphy's own treating physicians at M.D. Anderson, to two outside oncologists. These doctors were asked to give their medical opinion on whether the proposed treatment was medically appropriate for Mr. Murphy, not to provide an opinion on the ultimate question of coverage under the Plan's definitions. Both rendered their opinion that Mr. Murphy was a medically inappropriate candidate for the treatment requested. After receiving the reports of these two independent medical experts, Ms. Pape forwarded her workup and the reports to the vice-president of medical services, Dr. Chernov. By letter dated July 5, 1994, Dr. Chernov informed the Wal–Mart Plan and M.D. Anderson that Prudential's TCPA Unit had determined Mr. Murphy's proposed treatment to be not medically appropriate for him due to his persistent bone marrow involvement and his resistance to CHOP chemotherapy. Then, by letter dated July 15, 1994, Wal–Mart Plan notified Mr. Murphy that his requested treatment was determined not to be medically appropriate. In effect, Wal–Mart Plan denied coverage of the recommended specialized treatment.

Mr. Murphy's treating doctors at M.D. Anderson requested an appeal of the Plan's denial of benefits. Although the Wal–Mart Plan required a request for appeal to be submitted in writing by the plan participant, the Plan agreed to accept M.D. Anderson's letter as an authorized request for appeal. The Administrative Committee promptly scheduled a special session to address Mr. Murphy's Appeal. Before the meeting, the committee members received a complete copy of Mr. Murphy's appeal record. The Administrative Committee met and reviewed Mr. Murphy's file, including some additional information from the treating physicians at M.D. Anderson. Relying on the recommendation of Prudential's TCPA Unit and the written opinions of the two independent oncologists, the Administrative Committee unanimously voted to affirm the decision not to preapprove the proposed treatment. The vote was based on the language of the Wal–Mart Plan, the medical condition of Mr. Murphy, the medical evaluations, and the proposed treatment. By letter dated August 31, 1994, the Wal–Mart Plan formally denies to pre-approve the requested treatment as being not medically appropriate for Mr. Murphy's specific medical condition at the time.

On November 15, 1994, plaintiffs instituted this suit in state court seeking full contractual benefits and actual and punitive damages. Defendants properly removed the case to federal court on January 5, 1995 under 28 U.S.C. § 1331 and 29 U.S.C. § 1001, et seq. (ERISA). Both defendants now move for summary judgment.

## II. Summary Judgment Standard

■ Federal Rule of Civil Procedure 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Consequently, "[o]nly disputes of fact that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

 Where the nonmovant bears the burden of proof at trial, the movant may discharge its burden by showing, that is, by pointing out to the court, that there is an absence of evidence to support the nonmovant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Once the movant has carried its burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Accordingly, the nonmovant must go beyond the pleadings, and by its own affidavits or by depositions, answers to interrogatories, and admissions on file designate specific facts showing a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. In assessing the summary judgment evidence, the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in the nonmovant's favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14.

### III. The Wal–Mart Plan

The Wal–Mart Plan gives the administrator [its Administrative Committee] discretionary authority to resolve all questions concerning the administration, interpretation, or application of the Plan as well as eligibility for benefits. The Wal–Mart Plan provides that:

> [t]he [WAL–MART] PLAN herein expressly gives the ADMINISTRATIVE COMMITTEE discretionary authority to resolve all questions concerning the administration, interpretation, or application of the [WAL–MART] PLAN, including, without limitation, discretionary authority to determine eligibility for benefits or to construe the terms of the Wal–Mart Plan in conducting the review of the appeal. When making its initial determination pursuant to the claim denial and appeals section of this [WAL–MART] PLAN document, the [WAL–MART] PLAN shall also have such discretionary authority.

Axe Depo., Exhibit "4," p. 54. Wal–Mart Stores contracted Prudential to provide administrative services in connection with its plan benefits. The agreement provided that "Prudential will assist [Wal–Mart Plan] in determining the validity of, or amount of benefits payable for, any claim for medical benefits under the Plan which is referred to Prudential by [Wal–Mart Plan] for such determination." Agreement Between Prudential and Wal–Mart Stores, Plaintiffs' Exhibit C, p. ASO–B1. The agreement states that "[Wal–Mart Plan] retains complete authority and responsibility for the Plan, its operation, and the benefits provided thereunder, and that Prudential is empowered to act on behalf of [Wal–Mart Plan] in connection with the Plan only as expressly stated" in their agreement or as agreed to in writing. Agreement Between Prudential and Wal–Mart Stores, Plaintiffs' Exhibit C, p. ASO–B1.

The Wal–Mart Plan offers medical benefits. "To qualify as an eligible benefit, the service must be ordered by a doctor and must be certified as medically necessary." Summary Plan Description, Plaintiffs' Exhibit A, p. D–4. A service is deemed medically necessary after several factors have been considered, including but not limited to:

> A. Services which are required and appropriate for diagnosis and treatment of the PARTICIPANT'S condition, and required for the well-being of the patient.
> B. Services which are normal, routine, and accepted by the DOCTOR'S professional peers, notwithstanding geographical location.

Wal–Mart Plan Document, Plaintiffs' Exhibit B, p. 15. However, under the terms of the plan, certain charges are not covered. In particular, the Wal–Mart Plan excludes charges for "treatment or services that is experimental, investigational, unnecessary, and/ or inappropriate for the condition." Summary Plan Description, Plaintiffs' Exhibit A, p. D–7. Treatment that is experimental or investigational is defined as a "treatment, procedure, facility, equipment, drug, device or supply not accepted as standard medical treatment of the condition being treated or any of such items requiring federal or other governmental agency approval not granted at the time services were rendered." Summary

Plan Description, Plaintiff's Exhibit A, p. D–12.

The Plan sets forth procedures for appeal: Any participant whose medical claim has been fully or partially denied or payment withheld, may appeal the decision by writing the Wal–Mart Director of Benefits Administration. This written appeal must be received no later than 90 days after the participant's receipt of the written denial or other decision that is the subject of the appeal. The Director of Benefits Administration will then present the appeal to the Plan's Administrative committee (who has been expressly given, by the Plan, discretionary authority to resolve all questions concerning the administration, interpretation or application of the Plan) and advise you of the final determination. The associate's appeal process does not reduce a participant's right to initiate legal action. However, before a participant (or sponsor) may bring legal action in a court in connection with an adverse decision under the Medical Plan, he or she must pursue this appeal process. However, no legal action can be brought after the latter of two years from the filing of the claim or 45 days from the decision on the appeal.

Wal–Mart Plan Document, Exhibit A, p. D–10.

## IV. Wal–Mart Plan's Motion for Summary Judgment

■ Plaintiff's Third Amended Complaint alleges that Wal–Mart Plan acted in an arbitrary and capricious manner and/or abused discretion in denying plaintiffs' benefits and denying the subsequent appeal for medical treatment. Wal–Mart Plan moves for summary judgment on the ground that its decision to deny Mr. Murphy's benefits was as a matter of law, not arbitrary and capricious. When a defendant moves for summary judgment and the plaintiffs bear the burden of proof at trial, the defendant may satisfy its burden by showing that there is an absence of evidence to support plaintiffs' case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Accordingly, Wal–Mart Plan seeks to show that the Murphys do not present evidence to

support a finding that Wal–Mart Plan acted in an arbitrary and capricious manner.

### A. Arbitrary and Capricious

■ The parties do not dispute that this court's role is limited to reviewing the Plan's decision to deny benefits under the arbitrary and capricious standard. This standard was determined by the Supreme Court, stating that where the plan grants the administrator the discretionary authority to make the final and conclusive determination of the claim, the administrator's decision is reviewed under an abuse of discretion or "arbitrary and capricious" standard. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989); *Switzer v. Wal–Mart Stores, Inc.*, 52 F.3d 1294 (5th Cir.1995). The Wal–Mart Plan unquestionably gives the administrator (the Administrative Committee of Wal–Mart Plan) discretionary authority to make factual determinations concerning eligibility of benefits. *See Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1302–03 (5th Cir.1994) (holding that language providing that "decisions of plan administrator shall be final and conclusive" and that "the plan administrator will make the decision to authorize or deny payments" was plain language providing for plan administrator's discretionary authority).

■ The terms arbitrary and capricious are difficult to define. A couple of cases provide helpful language. "The touchstone of 'arbitrary and capricious' conduct is unreasonableness. Our inquiry is not whose interpretation of plan documents is most persuasive, but whether the plan administrator's interpretation is unreasonable." *Barnett v. Kaiser Foundation Health Plan, Inc.*, 32 F.3d 413, 416 (9th Cir.1994) (citations omitted). Arbitrary and capricious means that federal courts owe due deference to administrator's factual conclusions that reflect reasonable and impartial judgment. *Southern Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101 (5th Cir.1993); *Pierre v. Connecticut General Life Insurance Company/Life Insurance Company of North America*, 932 F.2d 1552, 1562 (5th Cir.1991). "Conduct is arbitrary and capricious if it is carried out in bad faith, not supported by substantial

evidence, or erroneous as a matter of law." RONALD J. COOK, ERISA PRACTICE AND PROCEDURE 8–42 (1994) (citing Ninth Circuit case law).

■■■■ The arbitrary and capricious standard offers courts review of limited scope. The standard exists to ensure that administrative responsibility rests with those whose experience is daily and continual, not with the judges whose exposure is episodic and occasional. *LeFebre v. Westinghouse Electric Corp,* 747 F.2d 197 (4th Cir.1984).

■■■■ Defendant, Wal–Mart Plan, contends that it did not act in an arbitrary and capricious manner when it denied Mr. Murphy's request for specialized treatment. The summary judgment record establishes that the Administrative Committee relied on opinions given by Prudential and two independent outside experts. Prudential first relied on the opinion of a nurse, Ms. Anne Pape, in the Technology and Clinical Practice Assessment Unit (TCPA Unit). Ms. Pape reviewed Mr. Murphy's records, the proposed treatment, researched current medical literature, and reviewed Prudential's Internal Evaluation and Coverage Statement. She determined that Mr. Murphy had absolute disqualifying factors. In particular, Prudential's internal evaluation and coverage statement recommended against treating Non–Hodgkin's Lymphoma, low grade with a bone marrow transplant where evidence existed of bone marrow involvement and the patient is older than fifty-five. Mr. Murphy showed both bone marrow involvement and was fifty-nine years old at the time.

Prudential also relied on the opinions of two outside oncologists. These doctors were asked to give their medical opinions on whether the proposed treatment was medically appropriate for Mr. Murphy, not their opinions on the ultimate question of coverage under the Plan's definitions. Both concluded that Mr. Murphy was an inappropriate candidate for the treatment requested. The opinions of both experts were consistent with each other and with Prudential's internal guidelines. After receiving the reports of these two independent medical experts, Ms. Pape forwarded her workup and the reports to the vice-president of medical services, Dr.

Chernov. Dr. Chernov informed the Wal–Mart Plan and M.D. Anderson that Prudential's TCPA Unit had determined Mr. Murphy's Proposed treatment to be not medically appropriate for him due to his persistent bone marrow involvement and his resistance to CHOP chemotherapy. The Wal–Mart Plan, specifically relying on the research and work conducted by Prudential denied coverage for the treatment.

The court finds that Wal–Mart followed its internal procedures, referred Mr. Murphy's file to Prudential who sought the opinion of three experienced individuals, and made a reasonable determination based in the information at hand. Hence, the summary judgment evidence precludes a finding that Wal–Mart acted unreasonably, in bad faith, in a partial manner, or that the decision was not supported by substantial evidence.

■■■■ Wal–Mart also argues that it did not act in an arbitrary and capricious manner when it denied Mr. Murphy's appeal. First the Plan agreed to accept M.D. Anderson's letter as an authorized request for appeal, even though the plan explicitly required that a request for appeal to be submitted in writing by the plan participant. Then, the Administrative Committee promptly called a special meeting, and reviewed Mr. Murphy's file, including some additional information from the treating physicians at M.D. Anderson. The Administrative Committee unanimously voted to affirm the decision not to preapprove the proposed treatment. The vote was based on the language of the Wal–Mart Plan, the medical condition of Mr. Murphy, the recommendation of Prudential's TCPA Unit, the written opinions of the two independent oncologists, and the proposed treatment.

Again, the court finds that the Wal–Mart Plan's decision to affirm the denial of benefits was not arbitrary and capricious. The committee held a prompt meeting, reviewed the entire appeal record and reviewed additional information sent in by M.D. Anderson treating physicians after the initial denial of treatment. Defendant, Wal–Mart Plan, has met its burden by showing that as a matter of law, its actions could not possibly be un-

reasonable, partial, executed in bad faith or unsupported by substantial evidence; defendant's actions, as a matter of law, could not be found to be arbitrary and capricious.

## B. Claims Procedure Under 29 U.S.C. § 1133

Plaintiffs' response to the motion for summary judgment attempts to highlight parts of the ERISA statute in which the defendants allegedly failed to comply, thereby making defendant's actions arbitrary and capricious. Plaintiff asserts that Wal–Mart Plan's denial did not comply with 29 U.S.C. § 1133. Title 29 U.S.C. § 1133 states that every employee benefits plan shall:

(1) Provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) Afford a *reasonable opportunity* to any participant whose claim for benefits has been denied for a *full and fair review* by the appropriate named fiduciary of the decision denying the claim. (emphasis added)

Plaintiffs first argue that defendant violated the statutory requirement for reasonable opportunity for a full and fair review, 29 U.S.C. § 1133(2), by not explaining in the denial letter or the Benefits Book what additional information can be considered by the administrative committee of the plan, how to submit additional evidence, or any other substantive matters which the plan participant could use to refute the determination that the treatment was not medically appropriate.

■■■ Other circuits have explained that full and fair review means "knowing what evidence the decision maker relied upon, having an opportunity to address that accuracy and reliability of the evidence, and having the decision maker consider the evidence presented by both parties prior to reaching a decision." *Sweatman v. Commercial Union Insurance Co*, 39 F.3d 594, 598 (5th Cir.1994) (citations omitted).

Plaintiffs also argue that defendants violated the statutory requirement, 29 U.S.C.

§ 1133, that the plan participant be given the reasons, easily understood by the participant, for denial of benefits. This, in turn, argues the plaintiffs, also prevents the possibility of a full and fair review. According to the applicable regulations, which provide a guideline to statutory interpretation, notice of denial must comply with the following requirements:

Contents of notice: A plan administrator or, [ ] the insurance company, insurance service or other similar organization, shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:

(1) The specific reason or reasons for denial; .

(2) Specific reference to pertinent plan provisions on which the denial is based;

(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material is necessary; and

(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.

Reg. § 2560.503–1(f), 29 C.F.R. § 2560.503–1(f).

■■■ This regulation imposes two separate notice requirements, i.e., notice of the denial (and the reasons therefor) and notice of the appeals procedures. The court finds that Wal–Mart Plan sufficiently complied with the requirements set forth in the regulations. The July 15, 1994 letter provides notice of denial. The reason for denial was because the treatment was "determined to be not medically appropriate at this time." Although the letter should have gone into more detail, this court cannot find that its simple nature could rise to the level of arbitrary and capricious, particularly because the writer, Mr. Axe, included his telephone number for further assistance. Additionally, even though the July letter does not specifically refer to the plan provision on which denial is based, the plan provision is referenced in the final denial letter of August 31, 1994. The July 15th letter provides notice of appeal by

referencing the page in the Benefits Book which outlines the steps to appeal. The letter does not provide a description of additional material necessary for the claimant to perfect a claim. Nevertheless, when Mr. Murphy's treating physicians sent in additional information, the Administrative Committee did consider it on appeal.

■ Furthermore, even if Wal–Mart Plan had not complied with the procedural requirements under 29 U.S.C. § 1133, the plaintiffs would only be entitled to a procedural remedy of remanding the ·case to the plan administrator for further findings or dismiss the complaint for benefits with leave to the claimant to exhaust internal administrative procedures. *See Tomczyscyn v. Teamsters Local 115*, 590 F.Supp. 211 (E.D.Pa 1984). Plaintiffs would not be awarded damages.

■ Finally, plaintiffs argue that Wal–Mart Plan acted in an arbitrary and capricious manner because they paid for the testing and treatment which determined that the plaintiff was an appropriate candidate and then denied treatment. The court cannot find this action arbitrary and capricious. To do so would dissuade health plans from even approving testing for experimental procedures. Medical testing is necessary to assist the plans in determining whether a participant is eligible for a particular treatment.

For the forgoing reasons, the court finds that Wal–Mart Plan did not act in an arbitrary and capricious manner. Plaintiffs have not presented summary judgment evidence of a fact issue for trial. Accordingly, the court GRANTS Wal–Mart Plan's motion for summary judgment.

## V. Prudential's Motion for Summary Judgment

Plaintiff's Third Amended Complaint argues against the constitutionality of ERISA in its entirety, ERISA's preemption provision specifically, and particularly the use of the preemption provision to prevent use of the savings clause to provide state law remedies in this case. The complaint goes on to set forth the various state law causes of action alleged. Defendants seek summary judg-

ment based on the fact that a previous opinion by this court, in this case, determined that ERISA did not violate provisions of the United States Constitution and that ERISA preempted all of Mr. Murphy's state law claims.

### A. Constitutionality of ERISA

■ The constitutionality of ERISA was decided by this court in a previous memorandum opinion in this case filed on March 20, 1995 by United States District Judge Howell Cobb. *Murphy v. Wal–Mart Associates' Group Health Plan*, 882 F.Supp. 95 (E.D.Tex.1995). The court relied on *Corcoran v. United HealthCare, Inc.* in finding that neither ERISA, nor the ERISA preemption provision violates the constitution, even if ERISA does not provide a remedy which might otherwise exist under state law. *Corcoran*, 965 F.2d 1321 (5th Cir.), *cert. denied*, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 684 (1992).

### B. State Law Claims Recharacterized as ERISA Claims

■ Prudential argued, during docket call on February 26, 1996, that plaintiffs' complaint must be dismissed since ERISA governs this action and plaintiffs have alleged only state law claims. Prudential correctly states that plaintiffs' Third Amended Complaint alleges only state law claims against Prudential. It is clear all state law claims in plaintiffs' Third Amended Complaint are preempted by ERISA. *Murphy v. Wal–Mart*, 882 F.Supp. at 98.

Contrary to Prudential's position, the fact that plaintiffs have alleged only state law claims does not necessarily require that the court dismiss their complaint. Rather, once the court concludes that the claims are preempted, the court may recharacterize them as claims arising under ERISA. *Williams v. Jackson Stone Company*, 867 F.Supp. 454, 459 (S.D.Miss.1994); *quoting Degan v. Ford Motor Co.*, 869 F.2d 889, 893 (5th Cir.1989) (preemptive effect of ERISA effectively recharacterizes state law claims into actions arising under federal law). Such recharacterization of state law claims for benefits under ERISA plans is made neces-

sary by the following corollary to the well pleaded complaint rule: "Congress may so completely preempt a particular area, that any civil complaint raising this select group of claims is necessarily federal in character." *Degan*, 869 F.2d at 893; *see also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (same).

Accordingly, the court must examine how plaintiffs claims against Prudential could be recharacterized under ERISA. Plaintiffs' Third Amended Complaint alleges fraud, misrepresentation, fraudulent inducement, invasion of privacy, negligence, gross negligence, violations of the Texas Insurance Code, violations of the Texas Deceptive Trade Practices and Consumer Protection Act, and breach of contract. The court will examine whether ERISA's civil enforcement provision, 29 U.S.C. § 1132, could possible provide a remedy for some of plaintiffs' claims to recover benefits. After much consideration and as the following discussion will show, the court finds that Prudential could not possibly be liable to Mr. Murphy for recovery of benefits or for money damages.

## C. ERISA's Civil Enforcement Provision, 29 U.S.C. § 1132

ERISA's civil enforcement provision, 29 U.S.C. § 1132, sets forth the possible suits that a participant or beneficiary may bring under ERISA. Since, Mr. Murphy's suit against Prudential seeks benefits under the plan or monetary damages for alleged bad faith or negligent acts, only two sections of the statute, § 1132(a)(1) and § 1132(a)(2), offer a possibility of relief.

## 1. Section 1132(a)(1) Suit for Individual Recovery of Benefits or Enforcement Under the Plan

ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(1), gives a participant like Mr. Murphy the ability to sue for benefits under the plan or to enforce his rights under the terms of the plan. Title 29 U.S.C. § 1132(a)(1)(B) provides in pertinent part:

A civil action may be brought—

(1) by a participant or beneficiary—

. . . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or clarify his rights to future benefits under the terms of the plan;

A lawsuit under § 1132(a)(1)(B) only authorizes equitable relief, not monetary relief. *Turner v. CF & I Steel Corp.*, 770 F.2d 43 (3rd Cir.1985) *cert. denied*, 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986); *see also Forsyth v. Humana, Inc.* 827 F.Supp. 1498 (D.Nev.1993) (limit of recovery is to restore the participant and beneficiaries to the position they would have occupied but for the breach of trust; monetary relief is not available).

The statute is not explicit about who can be sued for recovery of benefits under the plan. The statute does state that a plaintiff may sue the plan as an entity. 29 U.S.C. § 1132(d)(1) (1995) (stating that an employee benefit plan may sue or be sued under this subchapter as an entity); *Auto Club Ins. Ass'n v. Safeco Life Ins. Co.*, 833 F.Supp. 637 (W.D.Mich.1993) (holding that proper defendant in a suit to recover benefits under ERISA plan is the plan). Section 1132(a)(1)(B) contains no provision which would entitle the plaintiff to recover from any entity other that the plan for the alleged non-payment of benefits. *Kunz v. Colorado Association of Soil Conservation Districts Medical Benefits Plan*, 840 F.Supp. 811, 812 (D.Colo.1994). Here, Mr. Murphy properly sued the Wal–Mart Plan for benefits. However, the question is whether he can sue an entity like Prudential.

Several cases have found that defendants, other than the plan, who were sued for benefits, such as employers, corporate officers, and unions, were not proper parties because they did not possess control or discretion over the management or administration of the trust or its assets. *Reynolds v. Bethlehem Steel Corp.*, 619 F.Supp. 919 (D.Md. 1984) (employers); *Mehl v. Navistar Intl. Corp.*, 670 F.Supp. 239 (N.D.Ill.1987) (corporate directors); *Thompson v. Asbestos Workers Local No. 53 Pension Fund*, 554 F.Supp. 296 (M.D.La.), *aff'd*, 716 F.2d 340 (5th Cir. 1983) (union). These cases indicate that entities such as an employer, union or individual

corporate directors could be proper defendants for recovery of benefits, if they did possess control or discretion over the management and administration of the plan. However, if they had exercised the requisite authority or control, they would have fiduciary status in relation to the plan. Such a fiduciary could be sued for plan benefits in his or her capacity as a fiduciary under a separate provision, § 1132(a)(2). (see next section). The court has found no case were an entity other that the plan was successfully sued in its individual capacity for benefits under § 1132(a)(1)(B).[1]

## 2. Section 1132(a)(2) Suit Against a Fiduciary for Breach of Fiduciary Duty

██ ERISA's civil enforcement provision, 29 U.S.C. § 1132(a)(2), allows a participant like Mr. Murphy to sue a fiduciary of the plan for breach of fiduciary duty.[2] This court need not determine whether Prudential is a fiduciary under ERISA. Even if Prudential were sued as a fiduciary and determined to be a fiduciary, plaintiffs could not obtain relief from Prudential under § 1132(a)(2). Recovery from a fiduciary would go to the plan, not to an individual participant or beneficiary. The Murphys could not possibly recover the full cost of the recommended treatment which they seek.

Any recovery would go to the Wal–Mart Plan. *See Kunz v. Colorado Association of Soil Conservation Districts Medical Benefits Plan,* 840 F.Supp. 811 (D.Colo.1994).

In sum, no ERISA provision gives Mr. Murphy a cause of action against Prudential for benefits under the plan or other monetary relief from Prudential. Accordingly, the court GRANTS Prudential's motion for summary judgment.

### *FINAL JUDGMENT*

For the reasons stated in the court's Memorandum Opinion Granting Wal–Mart Associate's Group Health Plan's Motion for Summary Judgment and Granting Prudential Health Care Plan's Motion for Summary Judgment, it is hereby ORDERED that:

Plaintiffs take nothing from this suit against defendants.

Each party will bear their own taxable costs and attorneys fees incurred to date.

This is a final judgment.

1. There are instances were the court, for reasons other than the ERISA statute (i.e. piercing the corporate veil), held an entity liable for payment of benefits. *Thomas v. Peacock,* 39 F.3d 493 (4th Cir.) *cert. granted,* —— U.S. ——, 115 S.Ct. 1997, 131 L.Ed.2d 999 (1994) (holding that a district court's decision to pierce the corporate veil and allow plaintiffs to collect ERISA judgment for benefits was proper, because the principal owned a controlling interest in the corporation, served as its sole director, and engaged in corporate strategy of siphoning off its assets to favored credits owned or controlled by the principal in order to defeat collection of ERISA judgment); *McKinnon v. Blue Cross–Blue Shield of Alabama,* 691 F.Supp. 1314 (N.D.Ala.), *aff'd,* 874 F.2d 820 (11th Cir.1988) (holding that health care insurer and its wholly owned subsidiary health maintenance group were proper parties in a suit for denial of medical expenses, because insurer's participation, influence, and ownership of the maintenance group demonstrated alter ego status).

2. Title 29 U.S.C. § 1132(2) allows a participant to bring a civil action against a fiduciary for breach of fiduciary duty.

ERISA defines a fiduciary as anyone who:
(i) ... exercises discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets,
(ii) ... renders investment advise for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or
(iii) ... has any discretionary authority or discretionary responsibility in the administration of such plan.
29 U.S.C. § 1002(21)(A) (1995). This language makes clear that a person's actions, not the official designation of his role, determine fiduciary status. *Acosta v. Pacific Enterprises,* 950 F.2d 611, 618 (9th Cir.1991); *Useden v. Acker,* 947 F.2d 1563, 1574 (11th Cir.1991) (ERISA defines fiduciary not simply in terms of designated offices, but also more flexibly, with reference to the functions preformed by a person).