**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Donald Glenn PALMER, Dale R. Wallace, Patsy R. Gardner, and Lonnie Rannals, Defendants.**

**C.A. No. 1:01–CV–555.**

United States District Court, E.D. Texas, Beaumont Division.

Dec. 4, 2002.

See also 2002 WL 3174928.

Linda Gail Moore, Paul E. Ridley, John B. Rizo, Sr., Kirkpatrick & Lockhart, Dallas, TX, for Plaintiff/Counter–Defendant.

Zeb Davidson Zbranek, Zbranek Firm, PC, Liberty, TX, for Defendant/Cross–Claimant/Cross–Defendant.

Donald W. Duesler, Donald W. Duesler & Associates, Marc P. Henry, Henry & Fuller, Beaumont, TX, for Defendant/Counter–Claimant/Third–Party Plaintiff/Cross–Claimant.

Scott Masur McElhaney, Jackson Walker, Dallas, TX, Frank George Vlahakos, Jackson Walker, LLP, Houston TX, for Third–Party Defendant.

*ORDER AND OPINION GRANTING METROPOLITAN LIFE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND AUTHORIZING DEPOSIT OF FUNDS, DISCHARGE, AND ATTORNEY'S FEES*

SCHELL, District Judge.

This matter is before the court on "Metropolitan Life Insurance Company's Motion for Summary Judgment" (Dkt.# 30) filed on August 2, 2002. Defendant Dale R. Wallace ("Wallace") responded on August 19, 2002 (Dkt.# 38). Metropolitan Life Insurance Company ("MetLife") filed a reply on September 9, 2002 (Dkt.# 43), and Defendant Wallace filed a sur-reply (labeled as "supplemental response") on September 17, 2002 (Dkt.# 46). The court will also consider MetLife's "Motion for Order Authorizing Deposit of Funds, For Discharge, and For Attorney's Fees" (Dkt.# 31) filed on August 2, 2002. Defendant Wallace responded on August 19, 2002 (Dkt.# 37).

After considering the briefings of the parties and the applicable law, the court is of the opinion that MetLife's motion for summary judgment should be GRANTED. MetLife will be awarded $6,119.46 in attorney's fees pending the submission of more detailed billing records allocating the expenses incurred between those associated with the interpleader and those associated with defending itself from Wallace's counterclaim. After fees associated with the interpleader are subtracted from the insurance proceeds, MetLife is authorized to deposit those funds into the court's registry, and will be DISCHARGED from further proceedings.

## I. BACKGROUND

Brenda K. Palmer Wallace (hereinafter "the Decedent") was a participant in the AT & T group life insurance plan ("the Life Plan") and the AT & T supplementary life insurance plan ("the Supplementary Plan") (collectively "the Plans") for employees of AT & T. On November 5, 1986, Decedent named her then-husband, Donald Glenn Palmer ("Palmer"), as the primary beneficiary and her mother, Patsy R. Gardner, as the contingent beneficiary. On or about December 27, 1995, Decedent and Palmer divorced in the State of Texas. Wallace, Decedent's widower, alleges that according to the final decree of divorce, Decedent was awarded the Plans as her sole and separate property. On October 2, 1996, Decedent allegedly submitted a change of beneficiary designation form to AT & T, designating Wallace as primary beneficiary and Lonnie Rannals as contingent beneficiary and trustee of an unidentified trust. MetLife allegedly attempted only once to return the change of beneficiary form to Decedent for problems regarding information included in Decedent's change of beneficiary designation form. On April 10, 1998, Decedent married Wallace. On January 16, 2000, Decedent died and life insurance benefits in the amount of $36,000 for the Life Plan and $180,000 for the Supplementary Plan (collectively the "Plan Benefits") became payable. Subsequent to the Decedent's death, both Wallace and Palmer submitted claims for the Plan Benefits to MetLife. On September 11, 2000, MetLife submitted a letter to Palmer and Wallace, stating that Palmer's claim based on the November 1986 beneficiary designation and Wallace's claim based on the December 27, 1995 divorce decree were adverse to one another. Therefore, according to Wallace, MetLife stated that it was required to initiate an interpleader action, unless a sufficient compromise could be reached between the two parties. On October 10, 2000, an agreement was submitted to MetLife in which Palmer allegedly waived any and all

rights to the life insurance benefits of Decedent, agreed that all benefits should be made payable to Wallace, and released any and all claims against MetLife, AT & T and the Plans. On May 16, 2001, MetLife forwarded a "Release and Assignment" to be executed by Palmer, which set forth the terms of the October 10, 2000 agreement. This "Release and Assignment" was forwarded to Palmer by Wallace's attorney on May 17, 2001. On June 7, 2001, Palmer allegedly attempted to revoke his October 10, 2000, waiver and assignment and reinstate his claim for the Plan Benefits. On August 13, 2001, MetLife originally tendered $154,000 into the registry of the court and filed its complaint as an interpleader. That amount was incorrect, and MetLife acknowledges that the correct value of the plan proceeds is $216,000. *MetLife's Mot. for Summ. J.* at 1. Wallace filed a counterclaim against MetLife for negligence and breach of contract. *Wallace's Am. Resp. & Countercl.* at 7. The claims against MetLife in the counterclaim are the subject of this summary judgment motion.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to isolate and dispose of factually insufficient claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248,

106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *See id.* at 248, 106 S.Ct. 2505. The party moving for summary judgment has the burden to show that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *See id.* at 247, 106 S.Ct. 2505. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986). But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. In this instance, the movant is not required to offer evidence to negate the nonmovant's claims. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Once the movant has carried its burden, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). The nonmovant must adduce affirmative evidence. *See Anderson*, 477 U.S. at 257, 106 S.Ct. 2505.

Summary judgment evidence is subject to the same rules that govern admissibility of evidence at trial. *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 175–76 (5th Cir.1990). In considering a motion for summary judgment, the court cannot make credibility determinations, weigh evidence, or draw inferences for the movant. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in the nonmovant's favor. *See id.*

## III. ANALYSIS

■ Wallace contends that his claims for negligence and breach of contract can be brought under 29 U.S.C. § 1132. Wallace is fundamentally wrong in his legal interpretation. "It is well settled that ERISA generally preempts state law." *Rivers v. Cent. & S.W. Corp.*, 186 F.3d 681, 683 (5th Cir.1999) (citing *Morales v. Trans. World Airlines, Inc.*, 504 U.S. 374, 383, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992)). State law claims attempting to enforce rights under a plan are completely preempted by ERISA's comprehensive remedial scheme. *See* 29 U.S.C. § 1132(a)(1)(B) (providing a civil remedy to enforce a beneficiary's rights under the terms of an ERISA plan). Breach of contract and negligence are such preempted claims. *Anderson v. Elec. Data Sys. Corp.*, 11 F.3d 1311, 1315 (5th Cir.1994).[1]

■ Wallace correctly asserts his right to bring a civil cause of action to recover benefits due to him under a plan pursuant to 29 U.S.C. § 1132(a)(1)(B), but fails to note that the only proper defendant to such an action is the plan itself. *See Murphy v. Wal–Mart Assocs.' Group Health Plan*, 928 F.Supp. 700, 709–710 (E.D.Tex. 1996) (holding that there is no provision in section 1132(a)(1)(B) to support giving a beneficiary a cause of action against any entity other than the plan). Wallace also argues that he has pleaded sufficient allegations to support a claim of breach of fiduciary duty by MetLife. Wallace cites no authority for this contention. *See Wallace's Resp.* at 4.

■ Wallace's breach of fiduciary duty claim must fail for a multitude of reasons. First, the subsection of the statute that addresses breach of fiduciary duty claims is available only for the plan, not a beneficiary. *See* 29 U.S.C. § 1132(a)(2); *Murphy*, 928 F.Supp. at 710. Second, while section 1132(a)(3) allows a beneficiary to personally recover from a fiduciary, *Varity Corp. v. Howe*, 516 U.S. 489, 512, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), it is settled law in this circuit that a potential beneficiary, even if ultimately unsuccessful, suing to recover benefits under section 1132(a)(1)(B), may not utilize the "catchall" provision of section 1132(a)(3) to recover equitable relief for breach of fiduciary duty. *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir.1998); *Constantine v. Am. Airlines Pension Benefit*, 162 F.Supp.2d 552, 557 (N.D.Tex.2001) ("Because Plaintiff has resorted to the principal remedy for ERISA claimants [section 1132(a)(1)(B) ], she has also failed to state a claim under § 1132(a)(3) as described by the Supreme Court in *Varity*."); *Hager v. NationsBank Corp. Pension*, 1999 WL 1044498, *3 (N.D.Tex.1999) (concluding that a plaintiff that brings a lawsuit for benefits may not also bring a claim under section 1132(a)(3) for breach of fiduciary duty). Because Wallace is currently pursuing a claim against the Plans for benefits, under the law of this circuit, he cannot simultaneously sue MetLife for breach of fiduciary duty. Third, Wallace has presented no evidence, other than conclusory statements about the alleged actions of MetLife, to support a claim of breach of fiduciary duty.

## IV. DEPOSIT OF FUNDS, DISCHARGE, AND ATTORNEY'S FEES

■ Because Wallace's counterclaim for breach of contract and negligence fails by virtue of ERISA preemption, the court

---

1. Wallace does not cite any cases to support his position that preemption does not apply here. However, he does cite a case in urging the court to recharacterize his pleading to include non-preempted claims viable under ERISA. *Wallace's Suppl. Resp.* at 2.

has discretion to award attorney's fees. *See Bellaire General Hosp. v. Blue Cross Blue Shield of Mich.*, 97 F.3d 822, 832 (5th Cir.1996); 28 U.S.C. § 1132(g)(1). In determining whether to award attorney's fees, the court must consider the following factors: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) the deterrent effect of an award; (4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan; and (5) the relative merits of the party's position. *Bellaire*, 97 F.3d at 832, n. 20 (citing *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir.1980)). As previously stated, Wallace's claims against MetLife are preempted by ERISA under established caselaw. Wallace is solely responsible for the expenses MetLife incurred in its defense against Wallace's preempted claims. Therefore the court is of the opinion that MetLife should be awarded attorney's fees.

The court must further determine the reasonable amount to be awarded. *See id.* Wallace contends that the amount of fees requested is unreasonable, however, the court believes the $6,119.46 requested in MetLife's motion for summary judgment is reasonable in relation to the work involved.[2] *See Metlife's Mot. for Summ. J.*, Exhibit C (affidavit of Linda G. Moore). Although Wallace asserts that counsel for MetLife spent too much time preparing pleadings and briefs, the court disagrees. While the court is able to conclude that the fees charged are reasonable, it is unable to conclusively separate the attorney's fees associated with defending itself against Wallace's counterclaim with the attorney's fees associated with the original inter-

pleader. While the court grants all the fees, not all of them can fairly come from the funds to be deposited. Palmer had no connection with the counterclaim Wallace filed. Therefore, the expenses MetLife incurred defending itself should not be paid out of money which could potentially belong to Palmer. Wallace must reimburse MetLife for the attorney fees he directly caused by filing a counterclaim that was barred by preemption. The remainder of MetLife's expenses, stemming from the filing and litigation of the original interpleader action, benefits both Wallace and Palmer. Therefore, those expenses may be subtracted out of the money to be deposited.

For the court to order the correct allocation of attorney's fees, MetLife must resubmit its motion for attorney's fees with more specificity. In the more specific motion, MetLife needs to split its fees between those incurred in the regular course of filing and litigating the interpleader action and those specifically arising from its defense against Wallace's counterclaim.[3] Additionally, MetLife should include the exact total of the current value of the Plan Benefits to be deposited.

## V. CONCLUSION

After considering all written submissions and the applicable law, MetLife's motion for summary judgment is hereby GRANTED. MetLife's motion to deposit funds, for attorney's fees, and for discharge is GRANTED, pending a more specific accounting. MetLife is ORDERED to submit billing records within thirty days of this order. Upon the ultimate deposit of the Plan Benefits, less attorney's fees allocated to the interpleader, in the court's

---

2. The court declines to grant MetLife the additional $1,000 it anticipated incurring.

3. The court caps the fees at $6,119.46. MetLife will not be awarded fees associated with the filing of the more specific billing records.

registry, MetLife will be DISCHARGED from this proceeding.

It is so ORDERED.