**Earl J. TRAHAN, Jr., and Georgette N. Trahan,**

v.

**BELLSOUTH TELECOMMUNICATIONS, INC.**

Civ. A. No. 93–0107.

United States District Court, W.D. Louisiana, Lake Charles Division.

March 16, 1994.

Karl E. Boellert, Lake Charles, LA, for plaintiff.

Wayne T. McGaw, New Orleans, LA, for defendant.

*MEMORANDUM RULING*

EDWIN F. HUNTER, Jr., Senior District Judge.

This case is once again before the court on a partial motion for summary judgment. De-

fendant seeks dismissal of plaintiff's claims alleging wrongful denial of benefits under BellSouth's Sickness and Accident Disability Benefit Plan ("The Plan").

## Background

On or about June 2, 1992, BellSouth Telecommunications, Inc.'s ("BellSouth") security personnel questioned plaintiff concerning his alleged pursuit of personal business activities while on BellSouth's time. The next day, plaintiff took a leave of absence. On June 4, 1992,[1] plaintiff reported that he was unable to go to work, due to severe psychological trauma resulting from the intense company questioning, two days previously. From June 11 through August 27, Trahan received sickness benefits under the Plan. In an October 15 letter, the case manager for the Plan confirmed that plaintiff's benefits had been terminated as of August 28. Plaintiff duly appealed this unfavorable decision to the Employee Benefit Committee and the Employee Benefit Claim Review Committee. The committees upheld denial of Trahan's benefits, citing physician reports and eye witness accounts which indicated Mr. Trahan was capable of work, and no longer disabled. Thereafter, plaintiff resorted to the courts.

## Discussion

■ It is undisputed that BellSouth's Plan is an ERISA welfare benefit plan. 29 U.S.C. § 1003.[2] Ordinarily, if the plan administrator is not vested with discretionary authority to interpret plan terms, then the administrator's decision should be reviewed *de novo*. *Southern Farm Bureau Life Insurance Company v. Moore*, 993 F.2d 98, 100 (5th Cir.1993) (citing, *Firestone Tire & Rubber Company v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989)). However, this test applies only to cases involving plan interpretation. *id.* In our case, the Plan administrator relied upon § 4.1 of the Plan in terminating benefits to plaintiff.[3] Neither party in this case alleges a plan interpretation conflict. However, we note the possibility of an interpretation issue concerning whether the plaintiff was "physically disabled to work." There is evidence in the record that plaintiff was able to conduct his own business affairs, but there is considerably less evidence that plaintiff was able to perform the same tasks for BellSouth as he did prior to the disability. In other words, under the Plan, does the "disability cease" when the plaintiff can perform some "work", even though it is not the same "work" he performed previously? The *LeBlanc* court concluded that under the BellSouth Plan, benefits are properly denied when the employee can perform *any type of work*, even if not comparable to the work performed prior to disability. We follow that holding here.

■ This leaves us with a review of the administrator's factual determination. The specific inquiry before us is whether or not the facts and evidence in this case justified the discontinuation of plaintiff's benefits. When reviewing an administrator's factual determination (as opposed to a plan interpretation), the reviewing court applies an abuse of discretion standard. *Pierre v. Connecticut General Life Insurance Company*, 932 F.2d 1552, 1562 (5th Cir.), *cert. denied*, — U.S. ——, 112 S.Ct. 453, 116 L.Ed.2d 470 (1991); *Moore*, 993 F.2d at 101. Furthermore, when reviewing a factual determination, the reviewing court is limited to the evidence presented to the administrator at the time the final decision was rendered. *Pierre*, 932 F.2d at 1559; *Moore*, 993 F.2d at 101–102.[4]

---

1. Unless otherwise indicated, all events occurred in 1992.

2. In *LeBlanc v. BellSouth Sickness and Accident Disability Benefit Plan*, the Eastern District considered the same plan now before us, and held that it was an ERISA benefit plan. *LeBlanc v. BellSouth Sickness and Accident Benefit Plan*, 1993 WL 515796, 1993 U.S.Dist. LEXIS 17411 (E.D.La. Dec. 8, 1993) (a copy of the decision is attached). [Editor's Note: Copy deleted for purposes of publication.]

3. Section 4.1 provides, in part, that participants of the Plan shall "be qualified to receive payments under the Plan on account of physical disability to work ... [and] payments shall terminate when disability ceases."

4. We note that in *Wildbur*, (a case with which we are intimately familiar), the Fifth Circuit permitted us to consider evidence outside of the record in determining whether the administrator *interpreted* the Plan correctly. *Wildbur v. Arco Chemical Company*, 974 F.2d 631, 639 (5th Cir.1992). Yet, *Wildbur* emphasized that, "a district court

■ Defendant argues that the *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir.1982), two step, six factor test, should be applied to determine whether the administrator abused his discretion. However, we note that the cases which have applied this test, all did so in the context of a plan interpretation. *See, Dennard, supra; Denton v. First National Bank,* 765 F.2d 1295, 1304 (5th Cir.1985); *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 55–56 (5th Cir.) *cert. denied,* 498 U.S. 939, 111 S.Ct. 344, 112 L.Ed.2d 308 (1990); *Wildbur, supra; Batchelor v. International Brotherhood of Electrical Workers Local 861,* 877 F.2d 441, 444 (5th Cir.1989); *Jones v. Sonat, Inc.,* 997 F.2d 113, 115 (5th Cir.1993).

The *Dennard,* two part test, was specifically designed to review an administrator's *interpretation* of the Plan. In *Pierre,* the Court did not apply the *Dennard* test when it reviewed the administrator's *factual* determination. *Pierre, supra.* In its original decision, the *Pierre* Court stated, "Denial of benefits by a plan fiduciary may not be disturbed under ERISA unless the decision was made arbitrarily and capriciously or in bad faith, as the decision would be if unsupported by substantial evidence or based on an erroneous conclusion on a question of law." *Pierre v. Connecticut General Life Insurance Company,* 866 F.2d 141, 143 (5th Cir.) *vacated,* 877 F.2d 345 (5th Cir.1989). In *Pierre,* the Court, in effect, applied a "substantial evidence" test when it upheld the denial of benefits to the spouse of the deceased. *Pierre,* 932 F.2d at 1562–1563.

In *Rhodes,* the court upheld the denial of plaintiff's extended disability benefits, holding that there was "substantial evidence" justifying the Plan's factual determination that the employee was not permanently and totally disabled. *Rhodes v. Panhandle Eastern Corporation,* 1993 WL 346188, 1993 U.S.Dist. LEXIS 12212 (E.D.La. August 31, 1993). The court further held that, "Substantial evi-

dence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decision maker]. Substantial evidence requires more than a scintilla, but less than a preponderance." *id.,* (citing, *Sandoval v. Aetna Life & Cas. Ins. Co.,* 967 F.2d 377, 382 (10th Cir.1992)). Similarly, in *Duhon v. Texaco, Inc., et al.,* the court stated that, "the reviewing court is not rigidly confined to this two step [*Dennard*] analysis in every case." *Duhon v. Texaco,* 15 F.3d 1302 (5th Cir.1994). Accordingly, in reviewing an administrator's factual determination for abuse of discretion, we hold that the reviewing court must examine the record to see if the finding is supported by substantial evidence such that a reasonable mind might reach the same result.

■ In this case, plaintiff was seen by three psychiatrists: Dr. Rathmell, Dr. Whiteman, and Dr. Archer. Each of the doctors concluded that Trahan was presently unable to return to work. Dr. Whiteman specifically stated on August 13, that Trahan was not capable "of even limited work at this time." Dr. Rathmell also felt that plaintiff was unable, "to function in any meaningful manner no matter whether the job was reduced in responsibility or not."

In contrast to the report of the three examining psychiatrists, BellSouth had two of its physicians examine plaintiff's record.[5] They concluded that Trahan was capable of returning to work. However, the pivotal factor in this case, is the surveillance of Trahan during his supposed period of disability. William Reed, staff manager of security at BellSouth, conducted surveillance, and spoke with persons who witnessed Trahan managing his trucking business during the period of alleged total disability. Reed noted that Trahan spoke with different people, on at least five occasions at his office, while conducting the routine affairs of his trucking business. Furthermore, Reed secured the statements from two Department of Environmental

should evaluate the administrator's *fact findings regarding the eligibility of the claimant* based on the evidence before the administrator ..." *id.* (emphasis added).

**5.** It is not stated in the record the nature of the doctors' (Dr. Doleys and Dr. Tolbert) specialties.

We notice in the *LeBlanc* case, that BellSouth relied on Dr. Tolbert's recommendation with regard to plaintiff's hip injury. Presumably, Drs. Tolbert and Doleys are not certified in the field of psychiatry.

Quality agents, Direne Allen and David Daigle. They related to Reed that they had observed Trahan, and spoken with him in person while at Trahan's trucking business headquarters. Also, Ricky Thomassi (a competitor in the trucking business) told investigator Reed that he had seen Trahan at an equipment company discussing problems with machinery.

The evidence in this case is similar to that in *Pierre, supra.* The statements which Reed testifies to, were not made by him, and certainly constitute hearsay. The question is how much weight should be given to hearsay testimony. On review, it is necessary that, "hearsay meet certain indicia of reliability; if it does not, the abuse of discretion standard permits the court to reject the finding." *Pierre,* 932 F.2d at 1562. The court in *Pierre,* however, upheld the denial of benefits, due to the presence of corroborating evidence which supplemented the hearsay. *Pierre, supra.*

In our case, the hearsay statements of the witnesses alone, may not have provided sufficient indicia of reliability, especially the statement of Thomassi, Trahan's competitor. However, also in the record is a handwritten statement from the Department of Environmental Quality agent, David Daigle, which is personally signed by him, and reiterates that Trahan dressed, conversed, and conducted himself in a normal and efficient manner on September 17, 1992, a date relevant to plaintiff's continued benefits.

Furthermore, Drs. Doleys and Tolbert were privy to reports of the company investigator. The three psychiatrists conversely, were not aware of Trahan's apparent ability to conduct his personal trucking business. One of the psychiatrists, Dr. Whiteman, when later informed of this evidence, stated that he might have to reevaluate his diagnosis under the new circumstances.

We emphasize that our review is limited to the administrator's decision that plaintiff was able to do *some* type of work, and consequently was no longer disabled. There certainly exists more than a scintilla of evidence that plaintiff was capable of performing some type of work (even if of a limited nature). The record contains substantial evidence con-

firming that the administrator did not abuse his discretion in terminating plaintiff's benefits as of August 27.

Summary judgment is appropriate if "the record discloses 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Rodriguez v. Pacificare, Inc.,* 980 F.2d 1014, 1019 (5th Cir.) *cert. denied,* —— U.S. ——, 113 S.Ct. 2456, 124 L.Ed.2d 671 (1993) (quoting, Fed.R.Civ.P. 56(c)).

Under these circumstances, we conclude that defendant's partial motion for summary judgment should be, and is hereby, GRANTED. Plaintiffs' ERISA claims for wrongful denial of benefits under BellSouth's Sickness and Accident Disability Benefit Plan are DISMISSED.

Furthermore, plaintiff's motion to strike certain documents in support of BellSouth's motion is DENIED.

IT IS SO ORDERED.