Marie LACOUR, Plaintiff,

v.

LIFE INSURANCE COMPANY OF NORTH AMERICA, et al., Defendant.

No. 01CV0205.

United States District Court, W.D. Louisiana

March 5, 2002

Andrew S. Vallien, Natchitoches, LA, for Plaintiff.

Normand Francis Pizza, Michael J. Monistere, Milling Benson, et al, New Orleans, LA, George Wear, Jr, Shotwell Brown & Sperry, Monroe, LA, for Defendants.

### *RULING*

LITTLE, Chief Judge.

Before this court is a Motion for Summary Judgment [Doc. No. 31] submitted by defendant Life Insurance Company of North America. For the reasons set forth below, defendant's motion is GRANTED, and plaintiff's claim is DISMISSED WITH PREJUDICE.

### I. *FACTUAL AND PROCEDURAL BACKGROUND*

Plaintiff Marie Lacour ("Lacour") was employed as an operator for the Tennessee Gas Pipeline Company ("Tennessee") from 15 July 1981 until 5 December 1996, at which time she was medically retired by her employer. While employed at Tennes-

see, Lacour obtained insurance coverage through an employee benefit plan, the Tenneco Inc. Long–Term Disability Plan ("the Plan") offered by Tennessee's parent company, Tenneco Inc. ("Tenneco"). The Plan included long-term disability benefits and was insured by the defendant, the Life Insurance Company of North America ("LINA"). CIGNA Group Insurance ("CIGNA") was the claims administrator.[1]

In April 1997, Lacour made a claim for long-term disability benefits maintaining that she suffered from an inability to rest, nervousness, depression, dizziness, headaches, and numbness in her arm, hand and legs. In support of this claim, Lacour provided a certification of disability from Dr. Lyn A. Goodin ("Goodin"). Goodin diagnosed Lacour with depressive disorders, and Goodin opined that Lacour was unable to perform the duties of any occupation. As a result, LINA approved Lacour's claim for long-term disability benefits on 16 June 1997.

After paying benefits to Lacour for 24 months, LINA re-evaluated Lacour's disability status. According to the Plan terms, after an employee has received disability benefits for 24 months, the definition of disability changes from an inability to perform the duties of *that employee's occupation,* to an inability to perform the duties of *any occupation.* On the basis of a questionnaire completed by Lacour and further documentation provided by Goodin, LINA determined that Lacour was unable to perform the duties of *any occupation* and approved the continuing long-term disability benefits beyond 24 months.

Soon after this approval, LINA received an anonymous tip that Lacour had been working as a sitter for sick and elderly persons. When questioned by LINA, Lacour admitted that her name had been on the sitter list at the Natchitoches Parish Hospital for years and that she was performing sitting services at the recommendation of her physician, Goodin. Lacour insists that she was not getting paid for her services and explains that she visits with the sick and the elderly as a form of therapy to alleviate her own depression and to help others.

LINA conducted independent surveillance of Lacour that revealed that she spends most of each day away from her home. Additionally, LINA obtained an evaluation of Lacour's case from Dr. Dorothy Drugger ("Drugger") and Ken LeBeau ("LeBeau"), a licensed psychologist. Drugger and LeBeau interviewed both Lacour and Goodin for their report ("the Drugger Report"). From the interview with Lacour, Drugger and LeBeau learned that Lacour generally spends most of the day outside of her home visiting with people and running errands for people she visits. Lacour again denied receiving any payment for these services. Additionally, Lacour revealed to Drugger and LeBeau that she lives alone and manages all aspects of independent living. From their interview with Goodin, Drugger and LeBeau discovered that Goodin was surprised to hear of Lacour's active daily life and had previously assumed, based on Lacour's reported symptoms, that Lacour spent most of her day at home, leaving only when necessary. As a result of these interviews, Drugger and LeBeau concluded that Lacour appears able to work and that her symptoms do not support a dis-

---

1. The defendant represents that LINA is an indirect subsidiary of the CIGNA Corporation and one of the corporations that comprises the operating division entitled CIGNA Group Insurance. Although CIGNA Group Insurance is the designated claims administrator, employees of LINA perform the duties of claims administrator. To avoid confusion, therefore, and consistent with defendant's submissions to this court, LINA is considered to be both the insurer and the claims administrator.

ability—opining that it is inconsistent for a person with a disabling depression and general anxiety disorder to lead the active life that Lacour leads.

After receiving this additional information, LINA denied Lacour's continuing long term disability benefits on 23 March 2000. LINA stated that Lacour's symptoms did not support a psychiatric disability. The denial was based on the conflict between Lacour's self reported active level of functioning and Lacour's symptoms as reported by Goodin. LINA relied on the Drugger Report in concluding that Lacour was not disabled as defined in the Plan.

Lacour requested an appeal of this decision and was informed by LINA that she should submit any additional information that would support a reversal of LINA's denial. Lacour then submitted a report by Goodin stating her opinion that Lacour would not be able to maintain any employment. Additionally, Lacour submitted notes from Dr. John Harris and a neurological consultation from Dr. M. Riad Hajmurad.

On 15 September 2000, LINA upheld its previous denial of benefits. LINA advised Lacour that the additional medical reports received on behalf of Lacour's appeal did not contain objective data to support the severity of Lacour's claimed mental impairment. LINA concluded that there was no finding that Lacour was unable to perform substantially all of the material duties of her job or of any occupation for which she is, or may reasonably become, qualified.

Lacour filed suit in state court claiming that she is disabled and entitled to receive disability benefits from LINA under her employee disability plan. LINA removed the case to this court asserting that Lacour had stated a cause of action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, and that ERISA preempts any state causes of action in Lacour's complaint. LINA filed this Motion for Summary Judgment on 10 October 2001. Lacour filed her opposition on 31 October 2001 and LINA filed a reply on 3 January 2002.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-movant, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence allows a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 268, 106 S.Ct. 2505; *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir.1999).

The substantive law determines which facts are material. Rule 56 mandates summary judgment in any case in which the party with the burden of proof fails to establish an essential element of his case. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1123 (5th Cir.1988); *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir.1986). The party opposing a motion for summary judgment must present evidence creating more than a metaphysical doubt about the material facts or a theoretical possibility that his claim is good. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pennington v. Vistron Corp.*, 876 F.2d 414, 426 (5th

Cir.1989); *Washington,* 839 F.2d at 1123. Allegations in the pleadings, naked assertions of factual disputes, and conclusory allegations will not overcome a motion for summary judgment. *Solo Serve Corp. v. Westowne Assocs.,* 929 F.2d 160, 165 (5th Cir.1991); *Herrera v. Millsap,* 862 F.2d 1157, 1160 (5th Cir.1989); *Fontenot,* 780 F.2d at 1195–96.

### B. PREEMPTION OF STATE LAW CAUSES OF ACTION

■ LINA suggests that any state law causes of action alleged in the complaint are superseded by ERISA and consequently must be dismissed. It is unclear whether Lacour intended to allege any state law claims in her complaint. Although Lacour originally filed her law suit in state court, her complaint is devoid of any reference to law, either federal or state. Instead, she maintains only that LINA wrongfully terminated her disability benefits. As a remedy, she requests a reinstatement of past due benefits and interest, future benefits, and unpaid medical costs.

■ It is undisputed that the employee benefit plan in this case is governed by ERISA.[2] An ERISA claim preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a).[3] "A law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines,*

*Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

■ The fact that a plaintiff fails to identify in her complaint that her claim arises under ERISA is immaterial. A court may recharacterize a plaintiff's state claim as a claim arising under ERISA. *Murphy v. Wal–Mart Assocs.' Group Health Plan,* 928 F.Supp. 700, 708 (E.D.Tex.1996).

Plaintiff has stated a claim against LINA for failure to pay benefits under an employee disability plan that is governed by ERISA. As such, the claim falls squarely under 29 U.S.C. § 1132(a)(1)(B) (failure to pay benefits). Thus, Lacour's claim is recharacterized as a claim arising under ERISA. To the extent that plaintiff asserts any other state claims in the complaint, those claims are superceded by the ERISA cause of action.

### C. PROPER PARTIES

LINA asserts that as the claims administrator and insurer,[4] it is not the proper party to be sued in this action. LINA's position is that only the Plan itself, and not an administrator or third party insurer, may be named as a defendant in a claim to recover benefits under ERISA.

There is a split in the circuits as to which entity may be sued under § 1132(a)(1)(B) for recovery of benefits. Some circuits have held that ERISA permits suits under § 1132(a)(1)(B) only

---

**2.** Although plaintiff does not dispute that the Plan is governed by ERISA, for the sake of clarity an explanation of the ERISA requirements is undertaken here. An employee benefit plan must meet several requirements in order to be considered an ERISA plan. "[A]n ERISA plan is established 'if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits.'" *Memorial Hosp. Syst. v. Northbrook Life Ins. Co.,* 904

F.2d 236, 240–41 (5th Cir.1990) (quoting *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982)) (en banc). It is undisputed that the Tenneco Plan fulfills these requirements.

**3.** There are exceptions to this broad statement of preemption. None of the exceptions, however, is relevant here.

**4.** *See supra* note 1.

against the Plan as an entity. *See Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir.1985); *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1490 (7th Cir.1996) (quoting *Gelardi* for the proposition that the plain language of ERISA permits only two types of actions: actions against the plan as an entity for recovery of benefits under § 1132(a)(1)(B), and actions for breach of fiduciary duty under § 1109(a) and § 1105(a)); *Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir. 1993). Other circuits have disagreed and held that the entity charged with administering the plan may be named as a defendant in an ERISA action to recover benefits. *See Garren v. John Hancock Mut. Life Ins. Co.*, 114 F.3d 186, 187 (11th Cir. 1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."); *Terry v. Bayer Corp.*, 145 F.3d 28, 36 (1st Cir.1998) (quoting *Garren*); *Daniel v. Eaton Corp.*, 839 F.2d 263, 266 (6th Cir.1988) (holding that an employer is a proper defendant in a suit for benefits under ERISA if it controlled the administration of the plan).

The Fifth Circuit has yet to address the issue directly. The courts in this circuit to have addressed the issue have, in general, adopted the approach of the 9th Circuit in *Gelardi* without elaborate discussion and have held that only a plan itself, and not a plan administrator or third party insurer, may be named as a defendant. *See Roig v. The Ltd. Long Term Disability Program*, No. 99–2460, 2000 WL 1146522, at *9 (E.D.La. Aug. 4, 2000) (holding that a plan administrator may not be individually liable for the denial of benefits under section 1132(a)(1)(B)); *Murphy*, 928 F.Supp. at 710 (holding that an individual entity may be sued for plan benefits in its capacity as a fiduciary under § 1132(a)(2) but not for benefits under § 1132(a)(1)(B)).

In the instant case, LINA is the claims administrator and not the plan administrator by name. It is unclear, therefore, whether LINA could be named as a defendant even under the jurisprudence of those circuits that allow plan administrators to be sued for benefits. The contract, however, creates at least a material issue of fact as to whether LINA also serves as the plan administrator in some instances. Specifically, the contract explains, "The Plan Administrator is the Tenneco Benefits Committee *except where an outside claims administrator or insurance company handles claims administration, payments, and appeals of denied benefits.*" (emphasis added). In this case, it is clear that there is an "outside claims administrator or insurance company," LINA, that "handles claims administration." Thus, although the contractual language is not entirely clear, there is at least an argument to be made that LINA was serving as the plan administrator in this context. As stated, there is some authority for allowing a plan administrator to be named as a defendant in a suit for the recovery of benefits. Because the court finds that LINA did not abuse its discretion in denying Lacour's claim, the court will refrain from adding to the melee of whether an independent entity, other than the plan itself, may be named as a defendant in a suit for recovery of benefits. Instead, for purposes of this motion, it is assumed that LINA is a proper party to be sued under 29 U.S.C. § 1132(a)(1)(B) for failure to pay benefits.

## D. *REVIEW OF LINA'S DECISION TO DENY BENEFITS*

It is undisputed that this case is governed by ERISA. The main issue is whether Lacour suffers from a total disability as defined in the Plan. There is no controversy regarding the meaning of the relevant policy terms. Accordingly, the question is whether LINA abused its dis-

cretion when applying the Plan provisions to the facts of Lacour's claim.

### 1. Standard of Review

An ERISA plan administrator's factual determinations are subject to judicial review for abuse of discretion.[5] *Bratton v. Nat'l Union Fire Ins. Co.*, 215 F.3d 516, 521 (5th Cir.2000); *Meditrust Fin. Servs. v. Sterling Chems.*, 168 F.3d 211, 213 (5th Cir.1999); *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 100–01 (5th Cir.1993). The administrator's decision cannot be disturbed unless it is arbitrary and capricious, that is, when it is not supported by substantial evidence. *Meditrust*, 168 F.3d at 214–15; *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1562 (5th Cir.1991); *Trahan v. BellSouth Telcomms. Inc.*, 847 F.Supp. 54, 55 (W.D.La.1994). When evaluating the administrator's factual findings regarding a claimant's eligibility for benefits, the court must base its decision only on the evidence contained in the administrative record. *Vega v. Nat'l Life Ins. Servs.*, 188 F.3d 287, 289 (5th Cir.1999) (en banc); *Meditrust*, 168 F.3d at 213; *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d at 101–02. The administrative record may include documents submitted to the claims administrator after the claim was denied but before the initiation of a law suit, provided the administrator had an adequate opportunity to consider the additional records. *Bratton*, 215 F.3d at 521 n. 5 (5th Cir.2000). New evidence that is outside of the administrative record may only be introduced for

limited purposes; for instance, expert opinions may be used to explain medical terms. *See Bratton*, 215 F.3d at 521.

When the same company is both the insurer and the plan administrator, a conflict of interest arises because the insurer/administrator potentially benefits each time it denies a claim. *Vega*, 188 F.3d at 295; *Gooden v. Provident Life & Accident Ins.*, 250 F.3d 329, 333 (5th Cir. 2001). The existence of a conflict should be considered as a factor when determining whether an administrator abused its discretion in denying a claim. *Vega*, 188 F.3d at 297. The greater the evidence of conflict on the part of the administrator, the less deferential the court's abuse of discretion standard should be. *Id.* A conflicted administrator, however, does not have a duty to conduct a thorough investigation of the facts. The claimant is responsible for proving his own claim. *Id.* at 289.

### 2. Analysis

In the Plan at issue, LINA is given complete discretion to determine eligibility for benefits. The contract provides, "The Tenneco LTD Plan is administered by LINA Group Insurance Company, also referred to as the 'Claims Administrator,' who has the sole responsibility for determining eligibility for benefits." Later in the contract, it is specifically stated,

---

**5.** The abuse of discretion standard also applies to the administrators decisions interpreting Plan terms, when the Plan documents give the administrator discretionary authority to determine eligibility for benefits or to construe Plan terms. *Rhorer v. Raytheon Eng'rs and Constructors*, 181 F.3d 634, 638–39 (5th Cir.1999). Typically, the court first determines the correct interpretation of the Plan. If the administrator's construction is legally sound, the inquiry ends. If the administrator

did not interpret the Plan correctly, the court then determines whether the administrator's interpretation constituted an abuse of discretion. *Id.* at 639–40. Three factors apply at each of the two steps. *Id.* at 641, 643–44; *Wildbur v. ARCO Chem Co.*, 974 F.2d 631, 637–38 (5th Cir.1992). The six-part analysis applies only to administrative interpretations of the Plan documents, not to factual determinations in which the method of review is less rigid. *Trahan*, 847 F.Supp. at 56.

The Claims Administrators have been delegated full and final authority and discretion to:

- Make all final determinations under each plan, including eligibility for benefits; and
- Interpret and construe all of the terms and provisions of each plan.

This language mandates that the court review LINA's denial of benefits under an abuse of discretion standard. Plaintiff has not challenged this point. Because there is no allegation that LINA erred in its interpretation of the terms of the Plan, the court's inquiry is focused on whether LINA abused its discretion in determining that Lacour was not disabled under the Plan. That review is limited to a consideration of the administrative record.

 Lacour claims that LINA abused its discretion when it made the factual determination that she was not "disabled" according to the definition given in the Plan. Lacour argues (1) that her treating physician, Dr. Goodin, determined in June 1997 that Lacour could not work in any capacity because of her headaches, dizziness and depressive symptoms, and (2) in May 2000, Goodin opined that Lacour would not be able to maintain employment due to her anxiety and depression. Lacour contends that this evidence creates a genuine issue of material fact as to whether Lacour is disabled under the Plan.

Under the terms of the Plan, disability is defined as follows:

The LTD Plan pays benefits when you are disabled. You are considered to be "disabled" if, because of illness or injury:

- For the first 24 months, you are unable to perform substantially all of the material duties of *your regular occupation;* and
- After 24 months of having benefits payable under this plan, you are unable to perform substantially all of the material duties of *any occupation* for

which you are—or may reasonably become—qualified by training, education, or experience.

LINA paid benefits to Lacour for 24 months. After benefits had been paid for 24 months, LINA re-evaluated Lacour's status as "disabled" under the definition as provided in the Plan for the post–24 month period. LINA made the determination that Lacour was unable to perform the material duties of *any occupation.* Soon after this determination, LINA obtained additional information regarding Lacour's status. This information led LINA to conclude that Lacour was not disabled as defined in the Plan and resulted in LINA's decision to cease paying disability benefits to Lacour.

After reviewing the record and considering LINA's dual role as claims administrator and insurer, there is no evidence to suggest that LINA acted arbitrarily and capriciously in denying plaintiff's claim. To the contrary, LINA based its decision on a detailed medical report, on surveillance conducted on Lacour, and on Lacour's own representations to LINA.

LINA relied on the report of Drugger and LeBeau that was prepared following a telephone interview with both Lacour and her physician, Goodin. The Drugger Report suggested that the symptoms as reported by Lacour to Goodin were inconsistent with the active lifestyle also reported by Lacour, including the fact that she performed sitting services and often ran errands for those she visited. Lacour reported to Drugger and LeBeau that she manages her own finances and is capable of living alone. Lacour admitted she had been performing sitter duties for the sick and elderly. Despite her activities as a sitter, Lacour explained that she could not maintain employment because of her low stress tolerance and because she upsets easily. Drugger and LeBeau reported

from their interview with Goodin that Goodin was surprised to hear that Lacour was performing sitting services. Prior to learning of Lacour's activities, Goodin had assumed based on Lacour's symptoms that she spent most of her time at home. Drugger and LeBeau concluded that Goodin was unable to explain why Lacour was disabled from working. Goodin, on the other hand, continues to insist that Lacour is unable to maintain employment and informed LINA of this opinion in a letter dated 31 May 2000.

■ That the conclusions in the Drugger Report conflict with the opinion of plaintiff's physician is not in doubt. The sole issue, however, is whether LINA abused its discretion in denying Lacour's claim, and the court finds that LINA did not abuse its discretion. LINA gave the following reasons in support of its denial of Lacour's appeal:

> We have reviewed Dr. Goodwin's [sic] letter of May 31, 2000 and determined that there are no objective data to support the severity of your mental impairment that would prevent you from returning to your occupation or any other occupation which you may qualify based on your education, training and experience. The above facts mentioned your active normal life style and signs and symptoms that you reported would not appear to support a psychiatric diagnosis nor a psychiatric disability

LINA had no duty to give greater weight to the opinion of Goodin, Lacour's treating physician, than to the consulting physician, Drugger. *See Menendez v. Sun Life of Canada*, No. 99–2134, 2000 WL 300923, at *3 (E.D.La. Mar. 17, 2000) (citing *Dubuc v. Whitney Nat'l Bank Plan*, No. 98–0683, 1999 WL 4919, at *4 (E.D.La. Jan. 4, 1999)); *See also Milson v. St. Luke's Episcopal Hosp.*, 71 F.Supp.2d 634, 641 (S.D.Tex.1999); *Salazar v. Owens–Illinois, Inc. Salary Employee–Welfare Benefit Plan*, No. 94–1785, 1997 WL 10022, at *3 (N.D.Tex. Jan. 7, 1997) ("ERISA plan administrators may choose to rely on the opinions of independent medical consultants rather than on those of a participant's own physicians.") (citing *Salley v. DuPont De Nemours & Co.*, 966 F.2d 1011, 1016 (5th Cir.1992)).

The administrative record, consisting of Drugger's reports, LINA's independent investigation of Lacour, and Lacour's reports of her ailments and her active daily life, contains substantial evidence on which LINA could rest its decision that Lacour is capable of performing some work for which she is qualified. Moreover, the additional reports submitted by Lacour with her appeal do not support her claim of disability and therefore are not in conflict with LINA's decision. Lacour does not contend that the report of either Dr. Harris or Dr. Hajmurad offers objective data, or even a subjective opinion, that Lacour is disabled. The administrative record contains substantial evidence supporting the decision to deny Lacour's claim for long-term disability benefits.

### III. CONCLUSION

Lacour has failed to establish any issue of material fact supportive of her position that LINA abused its discretion in denying Lacour's claim for long term benefits. LINA's decision was supported by substantial evidence in the administrative record including plaintiff's statements and the report of an independent medical consultant. Accordingly, LINA's Motion for Summary Judgment is GRANTED. An appropriate order will issue.